UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61553-CIV-SEITZ/DUBÉ

TANYAIL COSTON,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #22) and the Motion for Summary Judgment filed by the Defendant (D.E. #25) pursuant to a Clerk's Notice of Magistrate Judge Assignment entered by the Clerk of Court, United States District Court for the Southern District of Florida. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Tanyail Coston (hereinafter "Coston" or "Plaintiff").

### I. FACTS

Coston received supplemental security income as a child on the basis of conduct disorder. (R. 75-76, 112-113).[1] On April 21, 2006, the Social Security Administration determined that the Plaintiff's period of disability ended in April 2006 and she was no longer disabled as of June 1, 2006. (R. 108-111). The decision was affirmed on reconsideration on April 25, 2007. (R. 91-97). Following a hearing on November 20, 2007 (R. 44-460), the ALJ issued a decision finding the

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

Plaintiff was no longer disabled. (R. 39-48). The Appeals Council granted the Plaintiff's request for review and remanded the case for further consideration. (R. 34-37). On December 2, 2008, a hearing was conducted. However, due to the Plaintiff not being represented by counsel, the hearing was continued. (R. 461-468). On March 16, 2009, a second hearing was conducted. (R. 469-485). Subsequently, the ALJ issued a decision denying the request for benefits. (R. 8-19). A request for review filed with the Appeals Council was denied. (R. 4-6).

The Plaintiff testified at the March 16, 2009 hearing that she was currently being treated for depression at the Henderson Clinic. (R. 473). Coston stated she sees a doctor once a month and a therapist once every two weeks. Coston also stated she had not received her GED and left school after the 9th grade. The Plaintiff added she tried to return to school but was not allowed to. Coston enrolled in a vocational school and attended for about 3 months. (R. 474). Coston testified she was incarcerated from the age of 14 through 17 for robbery, breaking and entering, and kidnaping. (R. 474-475). She explained that she took a baby from the parents while trying to steal a car. (R. 475).

The Plaintiff stated that while she was incarcerated she did not receive treatment during her first year. She also stated she initially took medication, but stopped once new people began working at the facility. (R. 476). Coston added that she was then freed and went to live with her mother. (R. 477). The Plaintiff claimed that once freed she had a boyfriend with whom she had two miscarriages which led to an altercation. Coston further testified that she took her mother's car and drove it into her ex-boyfriend for which she was arrested. Coston also testified that the judge was the same judge who oversaw her juvenile case and the judge sent her to anger management classes. The Plaintiff stated that the anger management worked and she has not been angry since because she does not want to return to jail. (R. 477).

According to the Plaintiff, she hears voices which are sometimes male voices and sometimes indistinguishable. (R. 477-478). The Plaintiff also testified she has thoughts about committing suicide. Coston submitted she has a son who is nine months old. (R. 478). Coston stated she lives with a friend, not the child's father. The Plaintiff testified that her friend helps her with the baby and during the daytime her mother helps as well. (R. 479).

Coston testified that she cannot currently work because she cannot read very well; she cannot type; she is forgetful and paranoid; she hears voices; and is always crying and depressed. (R. 479-480). The Plaintiff stated that her roommate sometimes has problems with her because she cannot help and does not pay rent. (R. 480). When asked why she could not work in a nursery, the Plaintiff stated as follows:

> I couldn't deal with the constant moving, too much activity going on,
> I guess, too many voices going on. I don't think I'd be any -- too
> much cheer around the kids because it bother me sometimes when I
> want to play with him or I feel like I don't play with him enough.
> When other people come around, he like gets more happy and stuff.

(R. 481). The Plaintiff further stated she felt the same way while she was in jail. (R. 481). The Plaintiff testified that in prison she was in isolation a lot because she was always in fights. Coston stated she was in the "hole" which is a cold brick room where a person sits on a mat by herself. She explained sometimes she was in the "hole" for 3 days at the most. She added that her brother was in isolation and killed himself.

Coston explained that her paranoia stems from constant dreams about death. (R. 482). She explained the dreams as follows:

> Yes, like I've dreamed of all of us dying of AIDS, all my mom kids
> dying of AIDS. That dream I have a lot, car accidents. Sometimes I
> just be taking a shower, and I just think if I slipped and I'm going to

> hit my head and bleed to death. Nobody find me. Somebody shoot through the walls of my room, and I just be dead. Nobody find me. Riding in the car, I don't like riding too much. I think that something is going to happen. Somebody is going to hit us and get into a bad car accident.

(R. 482-483). The Plaintiff testified she sometimes talks back to the voices. She also testified that on a daily basis her energy level is "tired" and she only wants to sleep. (R. 483). According to Coston, she is not alone with the baby and either her roommate or mother are there. (R. 483-484). The Plaintiff testified she was molested as a child and she discusses the incident with the therapist. (R. 484).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. However, a review of the medical records and the specific issues raised by the Plaintiff in her Motion for Summary Judgment shows that the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff was eligible for supplemental security income benefits as a child through April 1, 2006. The ALJ further found since April 1, 2006, the Plaintiff had the following severe impairments: dysthymic disorder, depressive disorder, dependent personality disorder and cannabis abuse. The ALJ determined that the Plaintiff did not have an impairment or combination of impairments that meets or equals a listing. (R. 13). The ALJ found that since June 1, 2006, the Plaintiff retained the residual functional capacity as follows:

> ... perform a minimally reduced range of light exertional level but with the following nonexertional limitations: The undersigned finds that the claimant can understand, remember, and carry out routine repetitive

4

> tasks. The claimant will have difficulty but has the ability to understand, remember, and carry out detailed instructions. She can keep to a schedule, maintain attendance, and complete a normal workweek without interruptions from psychological based symptoms. The claimant can work around others and deal with the general public.

(R. 15). The ALJ concluded that based on the Plaintiff's age, education, work experience and residual functional capacity, there were jobs which existed in significant numbers which the Plaintiff could perform, and thus, was not disabled within the meaning of the Social Security Act. (R. 18).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356,

1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Social Security Regulations establish an eight step evaluation process to determine whether a claimant's medical condition has improved or if a disability continues. See, 20 C.F.R. §404.1594(f).

The first determination is whether the claimant is engaged in substantial gainful activity. If so, a finding of a disability status will end. §404.1594(f)(1). If not, it must be determined whether the claimant suffers from an impairment or combination of impairments which meets or equal the severity of an impairment listed in Appendix 1, Subpart P of Regulations No. 4. If so, the disability will be found to continue. §404.1594(f)(2). If not, the determination to be made is whether there has been medical improvement in the claimant's condition. §404.1594(f)(3). Medical improvement is defined in the regulations as any decrease in the medical severity of any impairment which was present at the time of the most recent favorable decision finding the claimant disabled. §404.1594(b)(1).

If there has been medical improvement, it must then be determined whether the improvement is related to the claimant's ability to do work. §404.1594(f)(4). If not related to ability to do work

(or if no medical improvement has been seen) consideration must be given to whether any exceptions to the medical improvement standard exist. If none apply, the disability will be found to continue. §404.1594 (f)(5).

If a finding is made that the medical improvement is related to the ability to do work, the determination to be made is whether the claimant has a severe impairment or combination of impairments. If not, the claimant will no longer be considered disabled. §404.1594(f)(6). However, if the impairment or impairments are severe, the claimant's residual functional capacity will be assessed to consider whether the claimant can do the work performed in the past. If this work can be performed, disability will be found to have ended. §404.1594(f)(7).

If the claimant is not able to do the work performed in the past, a determination must be made, at step eight, whether the claimant can do other work considering the residual functional capacity assessment as well as the claimant's age, education and past work experience. If so, the disability will be found to have ended, if not, the disability will continue. §404.1594(f)(8).

The Plaintiff's first point of contention is that the ALJ erred in not providing an analysis as to whether the Plaintiff's "borderline intellectual capacity" was a severe impairment which imposed significant work-related limitations.

The determination of whether an impairment is severe or not severe at step two of the sequential analysis is a threshold inquiry. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). The court in McDaniel elaborated on the requirements for a finding of severity as follows:

> It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work

> experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

McDaniel, 800 F.2d at 1031; see also, Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987).

It is the opinion of this Court that the Plaintiff's argument must fail as the Plaintiff did not allege this as a basis for disability nor were the previous benefits granted on said basis. As noted above, medical improvement is defined in the regulations as any decrease in the medical severity of any impairment which was present at the time of the most recent favorable decision finding the claimant disabled. §404.1594(b)(1). A Disability Determination and Transmittal dated June 16, 1999, demonstrated that the primary diagnosis which served as the basis for the Plaintiff's prior award of benefits was conduct disorder. No secondary diagnosis was noted. (R. 75). Additionally, the record shows that the basis of medical improvement in the Plaintiff's case was that her condition of "conduct disorder" had improved. (R. 380).

Further, a general clinical evaluation performed by Dr. Robertson found as follows:

> She has some mild concentration deficits that may impair her ability to work in minor ways but her present symptoms would not indicate that she is functionally incapable of working in spite of her reports of being classified as part of the Exceptional Student Education Program as a child. Many of her historical and present problems, including, substance use and stealing as a child, are more behavioral/conduct related and impulsive in nature and not indicative of an emotional issue.

(R. 382-383).

On September 20, 2007, a Medical Source Statement of Ability to do Work-Related Activities (Mental), revealed that the Plaintiff was not limited in the ability to understand and remember simple instructions; carry out simple instructions; in the ability to make judgments on simple work-related decisions; and understand and remember complex instructions. The Assessment also stated that there

was only a mild affect on the Plaintiff's ability to carry out complex instructions; and to make judgments on complex work-related decisions. (R.337). Accordingly, the Court does not find that the ALJ committed error in determining that the Plaintiff's intellectual capacity was non-severe.

The Plaintiff's next point of contention is that the ALJ erred in finding that the Plaintiff had a high school education when in fact Coston never completed the 9th grade.

With regard to the Plaintiff's education, the ALJ stated that, "The claimant has at least a high school education and is able to communicate in English." (R. 17). As the Defendant correctly noted, a younger individual with a limited education or less; capable of performing unskilled sedentary, light, medium, or heavy work, with nor previous work experience is "not disabled." 20 C.F.R. Pt. 404, Subpt. P, App. 2, Tables 1-3. As such, while the Plaintiff is correct that the record demonstrated the Plaintiff did not have a high school education,[2] it is the opinion of the Court that the error was harmless as it did not impact the decision of the ALJ. The Plaintiff has not demonstrated the kind of gaps in evidence necessary to demonstrate prejudice. Graham v. Apfel, 129 F. 3d 1420, 1422 (11th Cir. 1997).

The Plaintiff's final point of contention is that the ALJ erred in not requiring the testimony of a vocational expert.

An ALJ is required to consult with a vocational expert when the claimant's exertional limitations prevent the claimant from performing a full range of employment or when a claimant has nonexertional impairments that significantly limit basic work skills. Phillips v. Barnhart, 357 F. 3d 1232, 1242-1243 (11th Cir. 2004). The Grids are only appropriate when each variable on the

---

2. The Plaintiff testified at the hearing that she did not complete the 9th grade or receive a GED (R. 474) and the Defendant concedes that the ALJ erred in said determination. (D.E. #25, pg. 10).

9

appropriate grid matrix accurately describes the claimant's situation. Walker v. Bowen, 826 F. 2d 996, 1003 (11th Cir. 1987). Testimony from a vocational expert is highly valued and commonly obtained in order to establish the availability of suitable alternative jobs for disability claimants. Holley v. Chater, 931 F. Supp. 840, 851, (S.D. Fla. 1996). Further, the ALJ has the obligation of developing a full and fair record regarding the vocational opportunities available to a claimant. Foote v. Chater, 67 F. 3d 1553, 1558 (11th Cir. 1995), citing Allen v. Sullivan, 880 F. 2d 1200, 1201 (11th Cir. 1989).

The use of the grids is appropriate under step 5 unless the claimant is unable to perform a full range of work at the given residual functional level or if the claimant has non-exertional impairments that significantly limit basic work skills. Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004). "Significantly limit basic work skills" has been interpreted as limitations which would prohibit the person from performing a "wide range" of work at the given work level. Id. at 1243. If the ALJ makes a determination that the nonexertional limitations do not significantly limit basic work skills, the ALJ may properly rely on the grids to determine if the claimant is disabled. Id. However, this requires a specific finding by the ALJ. Id. at 1244, quoting, Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the present case, after determining the Plaintiff's RFC, the ALJ stated as follows:

> Since April 1, 2006, the claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines. The claimant has not loss the ability to meet any basic work-related activities such as the ability to understand, carry out, and remember routine repetitive tasks, respond appropriately to co-workers, unusual work situations and

>   deal with changes in a routine work. She might have a slight problem responding appropriately to supervisor(s), but that would cause minimal or no loss of mental activities generally required by unskilled work. SSR 85-15.

(R. 18).

The ALJ found the nonexertional limitations did not impact the Plaintiff's ability to perform a full range of unskilled light work. The ALJ's determination was based on an overall review of the record, including the Plaintiff's medical records and the consultative examinations. Beyond the issue pertaining to the Plaintiff's intellectual capacity which was addresses by the Court above, there is no contention that the ALJ's RFC assessment was improper. Accordingly, the Court finds the regulations and the law of this Circuit do not require the use of a vocational expert at step five, and the ALJ's decision was supported by substantial evidence.

## III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be affirmed. Accordingly, the Motion for Summary Judgment filed by the Plaintiff (D.E. #22) should be **DENIED** and the Motion for Summary Judgment filed by the Defendant (D.E. #25) should be **GRANTED** .

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Patricia A. Seitz, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996

F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this 12 day of July, 2010.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE